Derek T. WILSON, Plaintiff,

v.

**PRUDENTIAL FINANCIAL**
et al., Defendants.

Civ.A. No. 02–2488 (RMU).

United States District Court,
District of Columbia.

Aug. 1, 2003.

Kevin L. Chapple, Washington, DC, for Plaintiff.

James P. Holloway, Stephanie Louise Marn, Proskauer Rose LLP, Washington, DC, for Prudential.

James P. Steele, Carr Maloney PC, Washington, DC, for CARCO.

### MEMORANDUM OPINION

URBINA, District Judge.

**DENYING THE PLAINTIFF'S MOTION TO EXTEND TIME TO FILE HIS RESPONSES; GRANTING THE DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

This matter comes before the court on the plaintiff's motion to extend time to file his responses to the defendants' respective motions. Plaintiff Derek Wilson brings suit against Prudential Financial ("Prudential") and CARCO Group, Inc. ("CARCO") (collectively, "the defendants") alleging breach of contract by Prudential and negligence and defamation by CARCO. After removing the case to this court, Prudential filed a motion to dismiss and CARCO filed a motion to dismiss or, in the alternative, for summary judgment. Several weeks after the deadline for responding to the motions had passed, the plaintiff filed a motion to extend time to file his responses to the defendants' motions. Because the plaintiff has failed to demonstrate excusable neglect, the court denies the plaintiff's motion to extend time and grants the defendants' motions to dismiss as conceded.

## II. BACKGROUND

### A. Factual Background

In 2002, Prudential offered the plaintiff a position as a "relocation counselor" in one of its offices in the District of Columbia.

Am. Compl. ¶ 2. The plaintiff states that he accepted the offer. *Id.* ¶ 4. On August 1, 2002, Prudential sent the plaintiff a letter "confirming his acceptance" and indicating that the offer was contingent upon the satisfactory completion of a background verification process expected to take 10 days. *Id.* ¶¶ 5–7. On September 3, 2002, more than 30 days later, CARCO—the consumer reporting agency whom Prudential had retained to conduct the background verification—provided Prudential with a report indicating that the plaintiff "had a criminal charge pending against him in Oklahoma." *Id.* ¶ 14. On the same day, Prudential sent the plaintiff a second letter, along with a copy of the CARCO report, denying his "application for employment" on the grounds that it had received an incomplete, unsatisfactory, and untimely background verification from CARCO. *Id.* ¶¶ 9–11, 16.

After receiving Prudential's letter and the CARCO report, the plaintiff contacted Oklahoma authorities, who informed him that there were no criminal charges pending against the plaintiff. *Id.* ¶ 18. The plaintiff also ordered his own background check from the Oklahoma State Bureau of Investigation, and learned that although there are persons named "Derek Wilson" or "Derrick Wilson" against whom charges are pending, none share the plaintiff's social-security number or date of birth. *Id.* ¶ 19.

On September 5, 2002, the plaintiff informed CARCO that the statements in the CARCO report were false, and asked CARCO to send a corrected report to Prudential. *Id.* ¶ 20. On September 6, 2002, CARCO sent Prudential an amended report indicating that the plaintiff had no criminal charges pending against him. *Id.* ¶ 21. Notwithstanding the amended CARCO report, Prudential continued to deny the plaintiff employment. *Id.* ¶ 22.

### B. Procedural History

On November 1, 2002, the plaintiff brought suit in the Superior Court of the District of Columbia claiming breach of contract by Prudential and negligence and defamation by CARCO. On December 18, 2002, Prudential removed the action to this court on the basis of diversity. On December 30, 2002, Prudential filed a motion to dismiss for failure to state a claim on which relief can be granted. On January 6, 2003, CARCO filed a motion to dismiss for failure to state a claim on which relief can be granted or, in the alternative, for summary judgment.

On February 26, 2003, the plaintiff moved the court to extend time through March 26, 2003 to file his responses to the defendants' motions. On March 23, 2003, the plaintiff filed oppositions to the defendants' motions to dismiss.[1] The plaintiff filed an amended complaint on the following day.[2] The court now addresses the plaintiff's motion to extend time and the defendants' motions to dismiss.

### III. ANALYSIS

### A. Legal Standard for Failure to Timely File an Opposition to a Motion

Local Civil Rule 7.1(b) requires an opposing party to file a memorandum of points and authorities in opposition to a motion within 11–days of the date of service of the motion. LCVR 7.1(b). If the opposing party fails to do so, the court may treat the motion as conceded. *Giraldo v. Dep't of Justice*, 2002 WL 1461787, at *1 (D.C.Cir. July 8, 2002) (citing *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 68 (D.C.Cir.1997)). Because the purpose of Rule 7.1(b) is to aid the district

---

1. The plaintiff later filed a motion to amend his opposition to CARCO's motion to dismiss.

2. When a plaintiff files an amended complaint, it supersedes the original complaint. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). If a motion to dismiss the original complaint is pending, and the defects it raises are contained in the amended complaint, the court may exercise its discretion and consider the motion as addressed to the amended complaint. *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 1996 WL 19028, at *10 n. 27 (S.D.N.Y. Jan. 17, 1996) (citing 6 FED. PRAC. & PROC. § 1476). Because the plaintiff's amended complaint is virtually identical to the original complaint, and the alleged defects raised by the defendants' motions are contained in the amended complaint, the court considers the defendants' motions as addressed to the amended complaint.

court in maintaining docket control, the D.C. Circuit recognizes that "the discretion to enforce this rule lies wholly with the district court." *Bender*, 127 F.3d at 67–68 (stating that "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule").

█ If an opposing party requests an enlargement of time before the 11–day period expires, the court may exercise its discretion under Federal Rule of Civil Procedure 6(b) and enlarge the time period "for cause shown." FED.R.CIV.P. 6(b); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). If the party requests an enlargement after the 11 days has expired, the party must show cause and "excusable neglect." *Id.* Among the factors that the district court may consider in determining whether neglect is excusable are "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C.Cir.2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Courts have noted that "fault in the delay [is] perhaps the most important single factor," while the prejudice factor is of relatively little importance. *Webster v. Pacesetter, Inc.*, 270 F.Supp.2d 9, 14–15 (D.D.C.2003) (internal quotations omitted). In granting or refusing enlargements, the district court enjoys broad discretion. *Yesudian v. Howard Univ.*, 270 F.3d 969, 971 (D.C.Cir.2001) (stressing that the court of appeals owes "great deference [to district courts] in what are effectively their case-management decisions" under Rule 6(b)); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 583 (1st Cir.1994) (noting that "[t]he district court is afforded great leeway in granting or refusing enlargements").

## B. The Court Concludes That the Plaintiff Has Not Demonstrated Excusable Neglect Under Federal Rule of Civil Procedure 6(b)

█ In this case, the plaintiff filed his motion to extend time nearly six weeks after his responses to the defendants' motions were due. Accordingly, because the 11–day period for filing an opposition had long since expired, the plaintiff must show excusable neglect to justify the extension. LCVR 7.1(b); FED.R.CIV.P. 6(b); *Nat'l Wildlife Fed'n*, 497 U.S. at 896, 110 S.Ct. 3177. Toward that end, the plaintiff provides two justifications. First, the plaintiff's counsel received the defendants' motions during the "Christmas holiday season." Pl.'s Mot. to Extend Time ("Pl.'s Mot.") at 1. Second, at the time the plaintiff's counsel received the defendants' motions, he was not a member of this court's bar. *Id.* The plaintiff therefore sought to retain new counsel. *Id.* After an unsuccessful search, the plaintiff re-retained his original counsel, who in the interim had become a member of this court's bar. *Id.* at 1–2.

In response, Prudential contends that the plaintiff's justifications do not qualify as excusable neglect.[3] Def. Prudential's Opp'n at 3–6. Prudential states that it filed its motion after Christmas and that in any case the fact of the "Christmas holiday season" should not have precluded the plaintiff's counsel from fulfilling his professional duty to timely file an opposition. *Id.* at 4–5. As for the bar-membership problem, Prudential asserts that "there were a number of simple steps [that the plaintiff's counsel] could have taken," including moving for *pro hac vice* admission, seeking an extension of time until his admission was complete, or simply notifying the court and the defendants of the problem. *Id.* at 5–6.

The court concludes that the plaintiff's justifications do not constitute excusable neglect. On the key factor of fault, the plaintiff clearly had control over the events leading to the delay.[4] *In re Vitamins*, 327 F.3d at

---

3. CARCO did not file a response to the plaintiff's motion.

4. With regard to the plaintiff's reliance on the Christmas holiday season, the court notes that both Prudential and CARCO filed their respective

1209; *Webster*, at 14–15. The plaintiff or his counsel became aware of the bar membership problem at some point after December 18, 2002, when Prudential removed the action to this court. Yet, as Prudential points out, neither the plaintiff nor his counsel took any of several possible steps to protect the plaintiff's claims.[5] Def. Prudential's Mot. at 5–6. Instead, the plaintiff and his counsel apparently discussed the matter between themselves and resolved that the plaintiff would find new counsel. Pl.'s Mot. at 1–2. Only after that effort failed—and more than two months after the removal date and six weeks after the response deadline—did the plaintiff and his re-retained counsel alert the court and the defendants to the now-moot bar membership problem. This failure to take timely action "[was] not the result of neglect, but [was] intentional, and thus [is] not appropriate for consideration" under Rule 6(b).[6] *Wilson v. Feldman*, 1991 WL 197025, at *2 (D.D.C. Sept. 18, 1991); *see also Pang–Tsu Mow v. Republic of China*, 220 F.2d 811, 815 (D.C.Cir.1955) (per curiam) (Stephens, C.J., concurring in part and dissenting in part) (noting that the appellant's failure to timely file a notice of appeal was "advertent" rather than by reason of neglect). Because the plaintiff has failed to demonstrate excusable neglect, the court denies the plaintiff's motion to extend time. and grants the defendants' motions to dismiss as conceded. FED. R.CIV.P. 6(b); LCVR 7.1(b); *Nat'l Wildlife Fed'n*, 497 U.S. at 896, 110 S.Ct. 3177; *Giraldo*, 2002 WL 1461787, at *1.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion to extend time to file his responses and grants the defendants' motions to dismiss as conceded. An order consistent with this Memorandum Opinion is

separately and contemporaneously issued this 1st day of August, 2003.

motions after the Christmas holiday had passed. Therefore, the fact of the Christmas holiday season should not have prevented the plaintiff from responding in a timely manner.

5. *See, e.g.*, LCVR 83.2 (setting forth procedures for member and non-member attorneys wishing to practice before this court).

6. Moreover, because the plaintiff had counsel at the time he became aware of the bar member-ship problem, the plaintiff cannot take refuge in the "special solicitude" granted *pro se* litigants who are late in replying. *Anderson v. Pirfo*, 1990 WL 209984, at *1 (D.D.C.1990); *see also Estate of Davidson v. Columbia Hosp. for Women Med. Ctr.*, 1991 WL 277434, at *2 (D.D.C. Dec. 11, 1991) (noting that if the plaintiffs had not been represented by counsel, the court might have excused their procedural delays).