Derek T. WILSON, Plaintiff,

v.

**PRUDENTIAL FINANCIAL,**
et al., Defendants.

No. CIV.A. 03–2313(RMU).

United States District Court,
District of Columbia.

Aug. 13, 2004.

---

Kevin L. Chapple, Washington, DC, for Plaintiff.

Stephanie Louise Marn, Proskauer Rose, LLP, Mariana del Valle Bravo, William Edward Buchanan, James P. Steele, Carr Maloney, PC, Washington, DC, for Defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

**DENYING CARCO's MOTION TO DISMISS; GRANTING PRUDENTIAL FINANCIAL'S MOTION TO DISMISS; DIRECTING THE PLAINTIFF TO PERFECT SERVICE**

### I. INTRODUCTION

Derek T. Wilson ("the plaintiff") lost his job offer due to a problematic background check. He brings suit against his once-prospective employer, Prudential Financial ("Prudential"), and the company that processed his background check, CARCO

Group, Inc. ("CARCO"), alleging breach of contract by Prudential and negligence and defamation by CARCO. The case is now before the court on Prudential's motion to dismiss for failure to state a claim and CARCO's motion to dismiss for insufficient service and failure to state a claim or, in the alternative, for summary judgment. Because the plaintiff fails to state a claim against Prudential, the court grants Prudential's motion to dismiss. Although the court determines that the plaintiff has not effected sufficient service on CARCO, the court denies CARCO's motion to dismiss for insufficient service and directs the plaintiff to perfect service on CARCO.

## II.  BACKGROUND

### A.  Factual History

The plaintiff alleges the following facts: In 2002, Prudential offered the plaintiff a position as a relocation counselor in one of its offices in the District of Columbia. Compl. ¶ 2. The plaintiff accepted the offer. *Id.* ¶ 4. On August 1, 2002, Prudential sent the plaintiff a letter "confirming his acceptance of [Prudential's] offer" and indicating that the offer was contingent on the satisfactory completion of a background-verification process expected to take 10 days. *Id.* ¶¶ 5–6, 25.  On September 3, 2002, CARCO (the consumer reporting agency whom Prudential retained to conduct the background verification) provided Prudential with a report. *Id.* ¶¶ 13–14.

CAROC's report contained a section on criminal history, and CARCO entered the word "pending" in the box correlating to the status of the plaintiff's supposed criminal history in Oklahoma. *Id.* On the same day Prudential received this report, Prudential sent the plaintiff a copy of the report and a letter denying the plaintiff's application for employment. *Id.* ¶ 9. Prudential cited an incomplete, unsatisfactory,

and untimely background verification as the reason for its denial. *Id.* ¶¶ 9–11, 16.

The plaintiff subsequently contacted Oklahoma authorities, who informed the plaintiff that there were no criminal charges pending against him. *Id.* ¶ 19. The plaintiff also ordered a background check from the Oklahoma State Bureau of Investigation. He learned that although there are persons named "Derek Wilson" and "Derrick Wilson" against whom charges are pending, neither shares the plaintiff's social-security number or date of birth. *Id.* ¶ 20.

On September 5, 2002, the plaintiff informed CARCO that his personal history was clear of criminal charges and asked CARCO to send an amended report to Prudential. *Id.* ¶ 21. On September 6, 2002, CARCO sent Prudential an amended report indicating that the plaintiff had no criminal charges pending against him. *Id.* ¶ 22. On September 25, 2002, Prudential sent the plaintiff a third letter stating that Prudential was aware that the plaintiff's background was clear and that Prudential would contact the plaintiff when a suitable position became available." Opp'n to Prudential's Mot. at 5. To date, Prudential has not offered the plaintiff employment. Compl. ¶ 23.

### B.  Procedural History

In November 2002, the plaintiff brought suit in the Superior Court of the District of Columbia, claiming breach of contract by Prudential and negligence and defamation by CARCO. *Wilson v. Prudential Financial,* 218 F.R.D. 1, 2 (D.D.C.2003). Prudential removed the action to this court on the basis of diversity. *Id.* In December 2002, Prudential filed a motion to dismiss for failure to state a claim. *Id.* CARCO followed a month later with a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment.

*Id.* The plaintiff moved the court to extend time through March 26, 2003, to file his responses to the defendants' motions, and on March 23, 2003, the plaintiff filed oppositions to the defendants' motions to dismiss. *Id.* The court denied the plaintiff's motion to extend time, however, and granted, as conceded, the defendants' motions to dismiss (the court dismissed the plaintiff's complaint without prejudice). *Id.* at 4.

In November 2003, the plaintiff brought the present suit against Prudential and CARCO. The plaintiff again claims breach of contract by Prudential and negligence and defamation by CARCO. As in the previous incarnation of this case, Prudential moves to dismiss for failure to state a claim and CARCO moves to dismiss or, in the alternative, for summary judgment. The court now turns to the motions.

### III. ANALYSIS

#### A. Service of Process

##### 1. Legal Standard for a Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process

■ A party can move the court to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. "[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf,* 816 F.2d 746, 751 (D.C.Cir. 1987) (internal quotations omitted); *Hilska v. Jones,* 217 F.R.D. 16, 20 (D.D.C.2003).

■ Rule 4(m) provides the time limits for service and the consequences of failing to provide proper service. It states that:

[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED.R.CIV.P. 4(m). Thus, where the plaintiff fails to effect proper service within the 120–day time limit laid down by Rule 4(m), the plaintiff carries the burden of showing good cause for that failure. *Id.; Whitehead v. CBS/Viacom, Inc.,* 221 F.R.D. 1, 3 (D.D.C.2004). Moreover, unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C.Cir.2002) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)).

##### 2. The Plaintiff's Service on CARCO Was Improper

■ Because CARCO is a corporation, the plaintiff must serve process in accordance with Federal Rule of Civil Procedure 4(h) or the District of Columbia's statutes for service on corporations. FED. R.CIV.P. 4(h); *James v. Booz–Allen & Hamilton, Inc.,* 206 F.R.D. 15, 17 (D.D.C. 2002). Rule 4(h) authorizes service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]" FED.R.CIV.P. 4(h)(1). Rule 4(h) also allows service in accordance with the law of the state where process is served or the state where the subject district court is

located. *Id.;* FED.R.CIV.P. 4(e)(1). The District of Columbia rules, like Rule 4(h), authorize service on corporations to be made on "an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service." D.C. R. CIV. P. 4(h)(1); FED.R.CIV.P. 4(h)(1).

In November 2003, the plaintiff attempted to serve process on CARCO by sending, via certified mail, a copy of the summons and complaint to the office of James P. Steele, a lawyer in the District of Columbia. Def. CARCO's Mem. Supp. Mot. to Dismiss ("CARCO's Mot.") at 2. Juanita Bush, an employee at the firm where Steele works, received and signed for the letter containing the summons and complaint. *Id.* Mr. Steele, CARCO's attorney in this action, also represented CARCO in the plaintiff's previous suit against CARCO. Opp'n to CARCO's Mot. at 3.

While the parties do not dispute the facts underlying the plaintiff's attempted service, CARCO contends that mailing process to Steele's office did not constitute sufficient service because Steele and Ms. Bush are not "officers, managing or general agents, or any other agent authorized by appointment or by law to receive service of process on behalf of CARCO." CARCO's Mot. at 6. CARCO also notes that the plaintiff has made no further attempt to properly effect service or request a waiver of service. *Id.* at 6.

The plaintiff maintains that "Steele is an implied agent of CARCO who is authorized to receive service of process on [its] behalf." Opp'n to CARCO's Mot. at 2. The plaintiff points out that he has re-filed against CARCO the exact claims that he filed against CARCO in his former action,

that Steele served as CARCO's counsel in that former action, and that Steele currently serves as CARCO's counsel in the present action. *Id.* at 3. Claiming (incorrectly[1]) that two motions are still pending in his former action before this court, the plaintiff argues that, aside from Steele, CARCO has no agent to receive service in the District of Columbia. *Id.* Finally, the plaintiff argues that, regardless of whether service was sufficient, the court should deny CARCO's motion because CARCO waived its service-of-process defense. *Id.* at 5. Because the plaintiff does not address whether Ms. Bush was eligible to receive service, the court assumes that she was not eligible. *Light,* 816 F.2d at 751. With respect to Steele, aside from pointing out that Steele was, and is, CARCO's counsel, the plaintiff offers no evidence indicating that CARCO authorized Steele, implicitly or explicitly, to receive service. The plaintiff likens his case to *United States v. Bosurgi,* 343 F.Supp. 815 (S.D.N.Y.1972), in which the district court decided that the defendants implicitly conferred authority on their attorney to receive process. Opp'n to CARCO's Mot. at 2–3. In *Bosurgi,* however, the defendants retained their attorneys for the purpose of asserting a right to a fund, the attainment of which "necessarily required the attorneys to resist the claims to the fund asserted by other parties." 343 F.Supp. at 818. Consequently, as the *Bosurgi* court notes, "receipt of process by the attorney in this suit ... was a necessary incident to the attorney's effort to establish [the defendants' claim]." *Id.* Unlike *Bosurgi,* however, the plaintiff's allegations provide no "basis for an inference" that CARCO conferred authority on Steele to receive service. *Cf.*

---

1. The plaintiff maintains that "there are two motions still pending in civil action 1:02CV02488 (RMU), namely a motion for reconsideration, and a motion for a more definite statement." Opp'n to CARCO's Mot. at 2. The court refers the plaintiff to the January 28, 2004, minute order in that case which resolves the two motions in question.

*Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092, 1094 (2d Cir.1990) (noting that service on defendant State Farm's attorneys was improper where the plaintiff offered "no basis for an inference that State Farm had authorized its attorneys to accept service of process"). Accordingly, the court determines that the plaintiff has not shown that Steel was an agent of CARCO for service and that the plaintiff's service on CARCO was therefore deficient. *United States v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 881 (Fed.Cir.1997) (holding that "even where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service"); *J. and L. Parking Corp. Inc. v. United States*, 834 F.Supp. 99, 102 (S.D.N.Y.1993) (noting that "[t]his court has specifically stated that an attorney does not become a client's agent for service of process simply because she represented the client in an earlier action"); *McLaughlin v. Fidelity Sec. Life Ins.*, 667 A.2d 105, 106 (D.C.1995) (holding that an attempted service on the party's counsel was insufficient without proof of the counsel's actual authority to receive service).

### 3. The Court Directs the Plaintiff to Perfect Process

■ The court now turns to whether the plaintiff has shown good cause for his failure to properly serve CARCO. Fᴇᴅ. R.Cɪᴠ.P. 4(m). The plaintiff's only remaining explanation as to why he failed to properly serve CARCO is that CARCO waived its service-of-process defense by addressing both sufficiency of service and the merits of the plaintiff's claims within the same motion. Opp'n to CARCO's Mot. at 4–5. The plaintiff's only support for this argument is a case decided in 1916.

*Id.* (citing *Lukosewicz v. Philadelphia & Reading Coal & Iron Co.*, 232 F. 292, 293 (E.D.N.Y.1916)). The Federal Rules, however, allow a party to make multiple Rule 12 defenses at the same time. Fed. R. Cɪᴠ. P. 12(g); *Simpkins v. District of Columbia Government*, 108 F.3d 366, 368 (D.C.Cir. 1997) (stating that, "a party choosing to file a Rule 12(b) motion must include all defenses and objections then available to him that Rule 12 permits to be made by motion") (quotations omitted). Accordingly, the plaintiff has not met his burden of establishing good cause. *Whitehead*, 221 F.R.D. at 3 (stating that "[m]istake of counsel or ignorance of the rules of procedure usually does not suffice to establish good cause"); *Cf., M.K. v. Tenet*, 99 F.Supp.2d 12, 18 (D.D.C.2000) (finding good cause where the identity of the parties to be served could not be ascertained).

■■ Because the plaintiff neither effected service within 120 days after filing his complaint nor showed good cause for this failure, the court has the discretion to dismiss the plaintiff's claims as CARCO requests. Fed.R.Civ.P. 4(m). Alternatively, the court can, in its sound discretion, "direct that service be effected within a specified time." *Id.* In this case, the court declines to dismiss the case without prejudice as to CARCO and instead directs the plaintiff to perfect service as provided in the accompanying order. While the court does not look lightly on failure to comply with the notice requirements of Rule 4, the court has no indication that granting the plaintiff extra time to perfect service works great prejudice on CARCO. For this reason, and in the interests of judicial economy, the court denies CARCO's motion under Rule 12(b)(5).[2] *Wise v. Depart-*

---

2. The court also dismisses the remainder of CARCO's motion without prejudice. To proceed to a Rule 12(b)(6) or Rule 56 determina-

tion, the court must first determine that the plaintiff has properly effected service of process. *Simpkins v. District of Columbia Gov't,*

*ment of Defense,* 196 F.R.D. 52, 57 (S.D.Ohio 1999) (justifying an extension of time because, among other reasons, the extension "works no prejudice to the Defendants").

## B. Failure to State a Claim

### 1. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

■ A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47–48, 78 S.Ct. 99 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).

■ Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C.Cir.2004); *Kingman Park,* 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Development v. Ashcroft,* 333 F.3d 156, 165 (D.C.Cir.2003); *Browning,* 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren,* 353 F.3d at 39; *Browning,* 292 F.3d at 242.

### 2. The Court Grants Prudential's Motion to Dismiss

■ The plaintiff argues that he formed an employment contract with Prudential that Prudential breached by not hiring the plaintiff. Compl. ¶ 35. Specifically, the plaintiff alleges that Prudential extended him an offer of employment subject to the condition precedent that the plaintiff complete a background check. *Id.* Although the plaintiff initially had problems with the background check, he claims that he subsequently rectified those problems. *Id.* ¶ 42. Finally, the plaintiff claims that, although he informed Prudential that he had an amended background check which satisfied their condition prece-

108 F.3d 366, 370 (D.C.Cir.1997) (noting that the usual judicial practice is to "first, determine if service of process has been properly accomplished, and only if it has, proceed to the Rule 12(b)(6) determination"). Accord-

ingly, once CARCO decides whether the plaintiff has perfected service in accordance with this opinion and accompanying order, CARCO is free to refile whatever objections it may have, if appropriate.

dent, Prudential never abided by its promise to hire the plaintiff subject to that condition being fulfilled. *Id.* ¶¶ 40–44.

Prudential, on the other hand, argues that a contract never existed because Prudential expressly indicated in its correspondence with the plaintiff that it did not intend to enter a contract with the plaintiff. Prudential Financial's Mot. to Dismiss ("Prudential's Mot.") at 3–4.[3] Alternatively, Prudential argues that the plaintiff did not satisfy a condition precedent to Prudential's employment offer (namely, a successful background check). *Id.* at 4–5. Finally, Prudential argues that, under District of Columbia law, Prudential does not need cause to terminate an offer for at-will employment. *Id.* at 5–6.

■■■ The court begins its analysis by noting the presumption under District of Columbia law that the plaintiff's job, had Prudential decided to hire him, would have been terminable at will.[4] *See Nickens v. Labor Agency of Metropolitan Washington,* 600 A.2d 813, 816 (D.C.1991). In the District of Columbia, "[u]nless parties indicate an intent to enter a contract of employment for a specific term, the employment relationship is terminable at will." *Id.; Nickens v. Labor Agency of Metropolitan Washington,* 600 A.2d 813,

816 (D.C.1991); *Fleming v. AT & T Info. Services, Inc.,* 878 F.2d 1472, 1474 (D.C.Cir.1989) (stating that District of Columbia law presumes employment is at will). To rebut the at-will presumption, there must be a showing that "the parties intended that termination be subject to specific preconditions." *Strass v. Kaiser Foundation Health Plan of Mid–Atlantic,* 744 A.2d 1000, 1011 (D.C.2000).

■■■ The plaintiff attacks the at-will presumption and maintains that the court should simply consider whether Prudential breached an employment contract. The plaintiff alleges that Prudential made an offer for specific terms of employment that included an annual salary, health benefits, disability insurance, and "2.5 days of vacation in 2002 and 13 days in the 2003 calendar year." Compl. ¶ 3. As a matter of law, however, salary, benefits, and similar terms do not indicate "employment for a specific term" and thus do not affect the at-will presumption. *Choate v. TRW, Inc.,* 14 F.3d 74, 76 (D.C.Cir.1994) (affirming summary judgment against a contract claim where the defendant sent the plaintiff "a letter offer setting forth terms of salary, benefits, incentive pay, stock options and savings plans, but not specifying any term of length for employment"). Making all reasonable inferences in favor

---

**3.** Prudential refers to the text of its August 1, 2002, letter to the plaintiff, which states: "this letter does not constitute a contract of employment and does not guarantee your employment for any specific period of time. Your employment with the company is at will, which means that both you and the company may terminate your employment at any time, for any reason, with or without cause or notice." Compl. Ex. 1 at 2. The court notes that it may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C.Cir.1997).

**4.** The at-will presumption, which generally places a higher burden on a party claiming breach of contract, does not alter the Rule 12(b)(6) standard. *See, e.g., Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir.1992) (noting that "[a] perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under [Rule 12(b)(6)]" and holding that, "[w]hile we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting 'facts' in light of the deferential rational basis standard").

of the plaintiff, the court therefore concludes that the plaintiff cannot show that Prudential intended to alter the at-will presumption.[5] Because the plaintiff has not shown that Prudential intended to alter the at-will presumption, the proper question to frame the remaining analysis is whether the plaintiff has stated a claim for either (1) breach of a promise to be considered for at-will employment or (2) breach of a promise to be given at-will employment subject to certain conditions (which the plaintiff alleges he eventually fulfilled).

■ Aside from certain statutory exceptions (which the plaintiff does not allege), "[i]t has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Thigpen v. Greenpeace, Inc.,* 657 A.2d 770, 771 (D.C.1995). In considering this general principle, "[m]ost courts ... have concluded that individuals who are promised at-will jobs, but whose offers of employment are retracted before the employment is to begin, have no remedy in contract law against the prospective employer." *Hyman v. First Union Corp.,*

982 F.Supp. 8, 13, 14 (D.D.C.1997) (holding that, under District of Columbia, Maryland, or Virginia law, no remedy exists for the claim of breach of a promise to be considered for at-will employment); *see also Pfeffer v. Ernst,* 82 A.2d 763, 764 (D.C.1951) (noting that contracts to re-employ former employees are terminable at will if the contracts are not for a definite period).

As in *Hyman,* because the plaintiff fails to provide any reason for the court to depart from the at-will presumption, the plaintiff has "no remedy in contract law against the prospective employer."[6] 982 F.Supp. at 13. Accordingly, making all reasonable inferences in the plaintiff's favor, the court determines that the plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C.Cir.2004). The court therefore grants Prudential's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the court denies CARCO's motion to dismiss for insufficiency of service of process and directs

---

5. Moreover, Prudential made the limits of its communication clear: in its August 1, 2002 letter (confirming the plaintiff's acceptance of Prudential's offer), Prudential stated that its letter "does not constitute a contract of employment and does not guarantee ... employment for any specific period of time." Compl. Ex. 1 at 2; *cf. Frazier v. University of the District of Columbia,* 742 F.Supp. 28, 29 (D.D.C.1990) (noting that the plaintiff was an at-will employee given that he "never alleges that he was employed by defendant for a definite period of time"). And, as the plaintiff acknowledges, Prudential's September 25, 2002 letter, which the plaintiff contends "promised" to employ him, merely states that Prudential was aware, as the plaintiff puts it, that the plaintiff's background was clear and would contact him "when a suitable position [becomes] available." Opp'n to Prudential's Mot. at 5.

6. The plaintiff likens his case to *Comeaux v. Brown & Williamson Tobacco Co.,* in which the Ninth Circuit, applying California law, awarded the plaintiff reliance damages after finding that the employer failed to assign the plaintiff work and salary for what was to be at-will employment. 915 F.2d 1264, 1270–71 (9th Cir.1990). In *Comeaux,* however, the court focused on the employer's withholding of "a 'hidden' contractual term that had not been disclosed, bargained-for, or agreed-upon." *Id.* at 1271. The court held that a "party may not protect itself from liability under a contract by asserting that a heretofore hidden term is somehow part of the agreement." *Id.* In light of its rather unique factual predicate, this court views *Comeaux* as distinguishable from the plaintiff's case. In any event, the court is not bound by the Ninth Circuit's interpretation of California common law.

the plaintiff to perfect service in accordance with Rule 4(m) before August 17, 2004. Furthermore, the court grants Prudential's motion to dismiss for failure to state a claim. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2004.